**UNITED STATES of America upon the relation and for the Use of the TENNESSEE VALLEY AUTHORITY**

v.

**Certain Rights Affecting 0.5 ACRE OF LAND, MORE OR LESS, IN ANDERSON COUNTY, TENNESSEE, Mary Ernestine Cunningham.**

**Civ. A. No. 4135.**

United States District Court
E. D. Tennessee, N. D.
April 16, 1962.

Charles J. McCarthy, Gen. Counsel, Thomas A. Pedersen, Asst. Gen. Counsel, James H. Eldridge, William W. Hurst, Tennessee Valley Authority, Knoxville, Tenn., for plaintiff.

Francis W. Headman, Knoxville, Tenn., for defendant.

Before TAYLOR, Chief Judge, WILSON, District Judge, and DARR, Senior District Judge.

TAYLOR, Chief Judge.

Before the Court for consideration are the exceptions of Mary Ernestine Cunningham to the Report of the Commissioners fixing her award at $1,100.00 for the taking of an easement over her property which is described in the pleadings as Tract XNR–15:32:S.1.

She asserts that the amount awarded by the Commissioners is totally inadequate for the rights that were condemned. She further asserts that the Commissioners were incompetent to act because they were selected from the locality wherein the land that was condemned lies, in violation of Title 16 U.S. C. § 831x. The pertinent part of this section provides:

> " * * * the court shall appoint three commissioners who shall be disinterested persons and who shall take and subscribe an oath that they do not own any lands, or interest or easement in any lands, which it may be desirable for the United States to acquire in the furtherance of said project, and such commissioners shall not be selected from the locality wherein the land sought to be condemned lies. * * * "

The Commissioners were John A. Ayres, Esq., Messrs. Duggan and McMillin, all of whom were residents of Knox County, Tennessee, while defendant's property is located in Anderson County, Tennessee. These are the same Commissioners who have served in Tennessee Valley Authority cases in this area for a number of years. In the opinion of the Court, their service in this case was in compliance with the Act.

Counsel for Mrs. Cunningham contended in oral argument that TVA was estopped to condemn the easement and that the order of condemnation should be vacated. It is our opinion that this contention is untenable. If TVA made a mistake when it conveyed the property to the defendant, it should not be precluded from correcting the mistake by subsequent condemnation proceedings. This is not to imply that TVA made a mistake, as conditions may have changed.

Estoppel does not arise against the TVA in the exercise of a sovereign function. Eminent domain is a sovereign function. Utah Power and Light Co. v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791; Sanitary District v. United States, 266 U.S. 405, 45 S.Ct. 176, 69 L.Ed. 352; 54 Am.Jur. — U.S. — 124; James v. Dravo Contracting Co., 302 U.S. 134, 147, 58 S.Ct. 208, 82 L.Ed. 155.

Defendant requested permission in her exceptions to introduce further proof on the question of damages. The reason for this request was due to the fact that counsel for the defendant did not know that TVA would be liable for any damage caused from flowage between the 1034 and 1044 contours during the months from June to December. Counsel for TVA conceded in oral argument that TVA would be liable for damage if the water flowed between these contours during the months of June to December. It does not appear to the Court that there is any genuine basis for misunderstanding in this regard. The defendant's request to reopen the case for further proof is denied.

Having decided the foregoing preliminary questions, we come to the main issue in the case, namely, whether the amount of the award of $1,100.00 is adequate for the easement taken by TVA.

The easement gives TVA the right to prevent the construction of new buildings or making additions to existing buildings and the right to prevent any excavating or filling below the 1044 foot contour. Defendant may maintain the existing buildings in their present location, but cannot make additions to or replace any of them, even though they are destroyed, below the 1044 foot contour.

The record shows there is a five room frame house with bath—a part of which

is located below the 1034 foot contour—a screened-in patio, a small bath house, a tool shed, a well and well house with an electric pump, a small wading pool, an open patio and a brick barbeque pit.

The cost of removal of the property would run from $10,000.00 to $12,000.00. The maximum probable flood on Norris Lake would fill to the 1044 foot contour. But in the more or less fragmentary records for the Norris area going back 100 years, the greatest flood under the TVA plan of operation would have been in 1886 and would have filled the Norris Reservoir to an elevation of 1034.

Since the Norris Dam was completed, the highest levels reached were 1031 in February, 1937, and 1024.7 in 1958. This history of Norris Lake indicates that future floods will not reach a point above the 1034 foot contour. But, as heretofore indicated, defendant cannot replace any of the present improvements on the property below the 1044 contour or construct any additional improvements below this contour, nor can she excavate or fill in below this contour. These are serious and substantial restrictions in the use of her property. They unquestionably materially affect the sale value of the property. It is not possible to measure with mathematical precision the decrease in value of the property because of the restrictions.

The proof introduced in behalf of defendant shows that the value of the property, before the taking was $17,000.-00 at the highest and $14,750.00 at the lowest.

The testimony of TVA shows that the property was worth $12,000.00 at the highest and $9,000.00 at the lowest before the taking. One of the witnesses for TVA testified that the difference between the value of the property before and after taking was $1,100.00, and the other two testified that the difference was $1,000.00.

■■■ TVA contends that the burden of proof was upon the defendant and that she offered no proof of the difference between the value before and after the easement. Hence, the amount of $1,100.-00 fixed by the Commissioners must stand. We do not agree. It is true that the burden was upon the landowner to show damage and the amount. Welch v. Tennessee Valley Authority, 6 Cir., 108 F.2d 95, 101; United States ex rel. Tennessee Valley Authority v. Powelson, 319 U.S. 266, 273, 63 S.Ct. 1047, 87 L.Ed. 1390. As previously indicated, defendant's evidence shows that the property was worth as high as $17,000.00 before it was burdened with the additional easement; plaintiff's proof shows that it was worth only $9,000.00 at the highest after the taking. It is our view that the difference between the figures $17,-000.00 and $9,000.00 is not the amount of damage to the property. This figure is too high.

■■ To be sure the defendant did not introduce expert proof as to the value of the property after the taking. In fact it is quite doubtful that the rare and nebulous elements of damages in this case have entered the field of expert information. Expert testimony, if presented, should be considered but not blindly followed. All of the testimony must be weighed and the triers of the fact should apply their own general knowledge of affairs. Under these principles, we are of the opinion that the property as a whole decreased $2,000.00 in value by the additional restrictions contained in the easement. We, accordingly, fix the damage at $2,000.00.

In reaching this figure, we have noted that the Commission allowed substantial damages for a like prohibition against reconstruction in United States of America ex rel. Tennessee Valley Authority v. Harry S. Jones, et ux., Civil Action No. 3295. The award in that case was affirmed by this Court. A breakdown of the $4,250.00 damages allowed indicated an apportionment of $1,500.00 damages to the lot and $2,750.00 to the improvements. The damage, in large part, to the property was due to the restrictions against reconstruction.