UNITED STATES of America upon the relation and for the Use of the TENNESSEE VALLEY AUTHORITY

v.

Lawrence T. HUGHES et al.

UNITED STATES of America upon the relation and for the Use of the TENNESSEE VALLEY AUTHORITY

v.

Howard S. BRAGG et al.

Civ. Nos. 5089, 5100.

United States District Court
W. D. Tennessee, W. D.

March 7, 1966.

Charles J. McCarthy, Gen. Counsel, T.V.A., Beverly S. Burbage, Knoxville, Tenn., for plaintiff in both cases.

J. Alan Hanover, Memphis, Tenn., for defendants in both cases.

Before BOYD, Chief Judge, TAYLOR, Chief Judge* and BROWN, District Judge.

PER CURIAM.

These causes came on for a hearing before this three-judge court on exceptions filed by the Tennessee Valley Authority (hereinafter "T.V.A.") to awards made by Commissioners in connection with the condemnation of easements for a high-voltage electric transmission line. It is the contention of the T.V.A. that the award was excessive in both cases. The two tracts are contiguous and similar and are located in the eastern part of Shelby County. By agreement the evidence introduced in the hearings before the Commissioners in each case may be considered to be a part of the record in the other case. The parties did not seek to introduce additional evidence for consideration by this court.

The property owners contend that their lands have a higher value than does the T.V.A. Moreover, the owners contend that their lands within the easement were worth nothing to them after imposition of the easement and that there was substantial incidental damage to the remainder of their tracts; the T.V.A. contends that the value of the lands within the easement was depressed approximately 50% by the imposition of the easement and that there was no incidental damage to the remainder of the tracts.

The Commissioners filed a full and well-considered opinion in support of their awards following their viewing of the property and taking of evidence. They made no specific finding as to the per acre value of the lands involved. They stated that, in view of the rights remaining in the owners in the easement areas, the owners were clearly wrong in their contention that these areas were worth nothing to them, but the Commissioners made no specific finding as to the amounts by which the easement areas were depressed in value. On the other hand, the Commissioners stated that the

* Eastern District of Tennessee, sitting by designation.

contention of the T.V.A. that there was no incidental damage to the remainder of the two tracts was likewise wrong. Thus, it is clear that the awards of the Commissioners were based on a partial diminution in value of the lands in the easement areas and on incidental damages to the remainder of the tracts. The Commissioners further stated that their awards were based on the preponderance of all the evidence, including their viewing of the property.

In its brief submitted to the court, the T.V.A., after complaining primarily about the finding of incidental damages, makes the following statement:

"While the opinion of the Commissioners is sometimes couched in terms of their evaluation of the record, we think it is clear that the Commissioners simply had a preconceived idea that there were damages outside of the right-of-way and that the award is not based on anything in the record but on their own independent viewpoint. As we see it, the Commission misconceived its function. A commission in a federal condemnation case is not a jury of view. *It sits in place of a jury and is required by law to make its award on the basis of the testimony. Its view of the property, which is permitted but not required, is to enable it better to understand the testimony and not to enable it to substitute its independent views for the facts established in the record * * *.*

"The Commission expressly rejected the Government's testimony on the critical issue in these cases. However able and conscientious these Commissioners may be, this was error. Measured by the evidence which was before them, their awards are clearly and grossly excessive." (Emphasis ours)

In view of the foregoing statement, we believe that it would be well at the outset to consider the proper procedure and function of the Commissioners and the function of this court as a reviewing authority.

Title 16, Sec. 831x, U.S.C.A., which controls T.V.A. condemnations, provides in part as follows:

"It shall be the duty of such commissioners to examine into the value of the lands sought to be condemned, to conduct hearings and receive evidence, and generally to take such appropriate steps as may be proper for the determination of the value of the said lands sought to be condemned, and for such purpose the commissioners are authorized to administer oaths and subpoena witnesses. * *

"Either or both parties may file exceptions to the award of said commissioners within twenty days from the date of the filing of said award in court. Exceptions filed to such award shall be heard before three Federal district judges unless the parties, in writing, in person, or by their attorneys, stipulate that the exceptions may be heard before a lesser number of judges. On such hearing such judges shall pass de novo upon the proceedings had before the commissioners, may view the property, and may take additional evidence."

It is clear that, though the statute does not expressly so provide, the Commissioners should, in their hearings, proceed in much the same manner as does a court of law, following the rules of evidence. This is implicit in the statutory provision and in the directions given to the Commissioners in United States ex rel. T.V.A. v. Indian Creek Marble Co., et al., 40 F.Supp. 811, 816 (E.D.Tenn. 1941). Moreover, while the statute expressly provides that the District Judges may, but are not required to, view the property, it only implicitly provides that the Commissioners may do the same, but it has been held that they may do so. Indian Creek Marble Co., et al., supra, at p. 816. Just compensation should be awarded, which is the difference in the market value of the entire tract before and after the taking (Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L. Ed. 1236 (1934)), and in arriving at their estimates the witnesses may value the

area covered by the easement before and after the taking plus incidental damages, if any, to the remainder of the tract. United States ex rel. T.V.A. v. An Easement and Right of Way, etc. (Starnes), 182 F.Supp. 899, 903 (M.D.Tenn.1960). The burden of proof on the issue of just compensation is on the property owner. Fain et al. v. United States ex rel. T.V.A., 145 F.2d 956, 959 (6th Cir. 1944); Hicks v. United States ex rel. T.V.A., 266 F.2d 515, 519 (6th Cir. 1959). While the Commissioners and the District Judges may not put aside the evidence and substitute their own opinions therefor (Welch v. Tennessee Valley Authority, 108 F.2d 95, 101 (6th Cir. 1939), they may, as triers of the fact, take counsel of their own experience and knowledge of like subjects. *Welch,* supra, at p. 101; United States ex rel. and for Use of T.V.A. v. Davis, 41 F.Supp. 595, 598 (E. D.Tenn.1941). They are not bound to follow blindly the testimony of the experts and should consider all of the evidence and apply their own general knowledge of affairs. United States ex rel. T.V.A. v. 0.5 Acre of Land, in Anderson County, Tenn. (Cunningham), 228 F. Supp. 674, 676 (E.D.Tenn.1962). The triers of the fact are not bound to follow the testimony of witnesses as to damage even though there is no testimony to the contrary. United States ex rel. T.V.A. v. Easement in Logan County, Ky. (Rogers), 336 F.2d 76, 80 (6th Cir. 1964). Conclusions as to value by tribunals are often reached by comparison of various estimates made by competent witnesses. *Welch,* supra, 108 F.2d at p. 100. The triers of the fact should apply all the usual tests in evaluating the testimony of witnesses including, to the extent that they have observed the witnesses testify, the manner and demeanor of the witnesses. *Welch,* supra, 108 F.2d at p. 101. Since the Commissioners and the District Judges may view the property, certainly they may consider what they saw as evidence in the case. *Fain,* supra, 145 F.2d at p. 959; *Indian Creek Marble Co., et al.,* supra, 40 F.Supp. at p. 816. As the statute provides, this court, upon the hearing of the exceptions to the awards, must "pass de novo" on the proceedings before the Commissioners and may view the property and take additional evidence. However, since this court has neither heard the witnesses in person nor viewed the property, it need not blind itself to the advantages of the Commissioners; this is implicit in the statement to that effect by the Supreme Court with respect to the review by a Court of Appeals, which under the statute (Title 16, Sec. 831x, U.S.C.A.) must fix the value of the property condemned " * * * without regard to the awards or findings theretofore made by the commissioners or the district judges * * *." United States ex rel. and for Use of T.V.A. v. Powelson, 319 U.S. 266, 273, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943). In our view, nothing we have stated is in conflict with the holding by the Supreme Court in United States v. Merz, 376 U.S. 192, 198, 199, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964), relied upon by the T.V.A., which deals with hearings by Commissioners under Rule 71A(h), F.R.C.P.

■ The Bragg tract consists of 1,478 acres and the easement is 10,227 feet long, 200 feet wide, has eight steel towers, and contains 47 acres. The taking was in March, 1964, the T.V.A. deposited $11,550 and the Commissioners awarded $27,350. The Hughes tract consists of 577 acres and the easement is 4,556 feet long, 200 feet wide, has five steel towers and contains 20.8 acres. The taking was in February, 1964, the T.V.A. deposited $7,600 and the Commissioners awarded $13,500.

These two tracts lie about twelve miles from the eastern city limits of Memphis and lie about two miles from a new expressway and the town of Arlington. They are presently being farmed as they have been for many years. It is clear, however, and really not disputed, that they have what may be called a speculative or investment value over and above what their value would be as farm lands. This is true primarily because of their nearness to Memphis and to the expressway leading into Memphis and to a much

lesser extent because of their nearness to Arlington. That this is true is actually demonstrated by the fact that nearby tracts were, prior to the time of taking, purchased for investment purposes.

The owners placed a per acre value on their land of from $600 to $750 and did not attempt to estimate the values of the tracts before and after the imposition of the easements. Their sole expert witness, well qualified, estimated a per acre value of $600. It was his opinion that the lands within the easements were worth nothing to the owners when so encumbered. It appears that he correctly understood that the owners could continue to use these lands and could place anything thereon except buildings and tall trees; however, it also appears that he incorrectly thought that the T.V.A. could, under its existing taking, place additional facilities on these easements. Moreover, the owners' expert was of the opinion that there was incidental damage, which he estimated by depreciating the value of 200 foot strips on each side of the Bragg easement by 40% and by depreciating by the same amount a 200 foot strip on the north side and the entire two triangular plots south of the Hughes easement. He thus arrived at a before and after value difference of $53,221 for the Bragg property and $33,792 for the Hughes property.

The highest per acre value placed on these tracts by a T.V.A. expert witness was $500. All of these witnesses (three in the Bragg case and four in the Hughes case, all well qualified) were of the opinion that the land in the easements was depreciated in value about 50% and that there was absolutely no incidental damage. They testified that there would be incidental damage to the remainder of the tracts only if an easement crossed a road frontage at such a severe angle that the land between the easement and the road could not be developed. With respect to the Bragg tract, the highest estimate of just compensation by a T.V.A. witness was $11,750 and the lowest was $8,425; with respect to the Hughes tract, these figures are, respectively, $5020 and $4420.

We conclude that the Commissioners were correct in determining that there was incidental damage to both tracts. To say that they have speculative or investment value because of their nearness to Memphis and the expressway is to say that more than a farm land price would be paid because of their development potential. And while it is true that good planning could no doubt greatly reduce interference by the easements with the development of the land outside the easements, the easements would create a problem to a developer. This is particularly true of the two triangular plots, consisting of about 43 acres and about 12 acres, south of the easement on the Hughes tract. No person can say now what the development would be and therefore precisely what the problems would be. But certainly a prudent investor would be to some extent influenced by these facts in determining what he would pay for these lands and would accordingly reduce his offering price. We would agree that there would have been much less incidental damage if these farm lands had no such development potential.

With respect to the lands covered by the easements, we think a depreciation of the value by 50% is reasonable. These lands will clearly be used for farming for a considerable time to come, and these easements, with the exception of an inconsequential amount of land around the footings of the towers, do not interfere with farming use at all. On the other hand, again considering the speculative or investment factor, these easement areas can never be developed, which would influence a purchaser.

We further conclude that the per acre value of these lands is about $600. We base this conclusion on sales of land comparable to these lands prior to the taking plus a recognition that land values were going up between the time of these sales and the taking.

With respect to the Bragg tract, we find that the land covered by the ease-

ment was depreciated in value by $14,100 and the incidental damage was $9,000 and that therefore the fair market value of this entire tract was reduced by $23,100 by imposition of the easement.

With respect to the Hughes tract, we find that the land covered by the easement was depreciated in value by $6,240 and that the incidental damage was $6,000 and that therefore the fair market value of this entire tract was reduced by $12,240 by the imposition of the easement.

Orders will be prepared by counsel for entry consistent with this decision.