UNITED STATES of America upon the relation and for the Use of the TENNESSEE VALLEY AUTHORITY, Plaintiff,

v.

An EASEMENT AND RIGHT OF WAY OVER THREE TRACTS OF LAND, One Containing 10.3 Acres, More or Less, Another Containing 2.1 Acres, More or Less, and the Third Containing 0.1 Acre, MORE OR LESS, IN LAFAYETTE COUNTY, MISSISSIPPI, James Evan Smith, et al., Defendants.

No. WC 6543.

United States District Court, N. D. Mississippi, W. D.

April 21, 1970.

Robert H. Marquis, Thomas A. Pedersen and H. Peter Claussen, of Tennessee

Valley Authority, Knoxville, Tenn., for plaintiff.

Euple Dozier, Fulton, Miss., Taylor McElroy, Oxford, Miss., for defendants.

## OPINION

ORMA R. SMITH, District Judge.

This eminent domain proceeding was instituted by the United States of America, upon relation and for the use of the Tennessee Valley Authority (TVA) to acquire an easement and right-of-way over three tracts of land situated in Lafayette County, Mississippi. The authority for the taking is the Tennessee Valley Authority Act of 1933, 48 Stat. 58, as amended, 16 U.S.C.A. § 831–831dd, and the interest to be acquired in the property is a permanent easement and right-of-way for the construction, operation, and maintenance of portions of an electric power transmission line, designated by TVA as the Holly Springs-Oxford Transmission Line.

The proceeding involves three tracts —designated as Tract No. HSO–69, Tract No. HSO–71, and Tract No. HSO–75. The taking of the easement across Tract No. HSO–71 and Tract No. HSO–75, has been finally concluded, and the matter before the Court for decision concerns only Tract No. HSO–69. This tract contains a quarter section of land, or 160 acres, and is owned by James Evan Smith, Clytee Smith Mayfield, Viola Grace Smith Pitts, and William Van Smith, beneficiaries of the estate of James Evan Smith.

The right-of-way upon which the easement is imposed is 150 feet wide and consists of 75 feet on each side of center line, which enters the north line of the tract at a point 1035 feet west of the northeast corner, and runs S. 11° 20′ W., 1651 feet; thence S. 59° 01′ W. 1345 feet to the west line of the tract, at a point 327 feet north of the southwest corner thereof.

This action is controlled by 16 U.S.C.A. § 831x, as such section existed prior to the adoption of Pub.L. 90–536, § 1, 82 Stat. 885, September 28, 1968. Pub. L. 90–536, § 2, provides "The amendment made by this Act shall be effective only with respect to condemnation proceedings initiated after thirty days following the date of enactment of this Act," (September 28, 1968). This action was filed December 22, 1965.

Pursuant to the provisions of 16 U.S. C.A. § 831x, the Court, on December 23, 1965, appointed three Commissioners for the purpose of ascertaining the value of the property sought to be acquired in this action and to assess the compensation to be paid therefor.

The Commissioners held a hearing on the issues presented at the United States Courthouse in Oxford, Mississippi, beginning on September 21, 1966. They received and considered the evidence introduced by the parties, and thereafter, on November 22, 1966, filed with the Clerk their findings in which they found that the fair market value of the tract of land here involved had been reduced by the sum of $10,250.00 by virtue of the taking.

Exceptions to the award of the Commission were filed by TVA on December 10, 1966, on the grounds that (1) the award was excessive, (2) the award was for a sum greater than just compensation for the property condemned, (3) the award was not supported by the evidence, and (4) the award was contrary to the evidence.

TVA prayed that the exceptions be heard by three federal district judges, as provided in the Tennessee Valley Authority Act. Thereafter the parties filed a stipulation waiving a three-judge hearing on the exceptions by TVA, and agreeing that the exceptions might be heard before the late Honorable Claude F. Clayton, United States District Judge for the Northern District of Mississippi, and upon his death, the parties filed a stipulation agreeing that the undesignat-

ed district judge might hear the exception.[1]

The case has been submitted to the Court on oral arguments and the entire record in the case, including a transcript of the proceedings before the Commission and all exhibits.

An examination and study of the record discloses that the Commission received the testimony of eight witnesses on the question of damages, five for defendants and three for TVA.

Two of the co-tenants of the land testified in their own behalf as to the damages suffered as the result of the easement imposed on the property. Three expert witnesses were introduced by them.

The co-tenants gave their opinion of the fair market value of the land before and after the taking. They viewed the imposition of the easement as having the practical effect of taking the fee of the land within the right-of-way. They estimated the damages at $20,000.00, giving the entire tract before and after taking the values of $80,000.00 and $60,000.00 respectively. They testified that the land was presently being used for pasture and timber purposes, but the highest and best use for the land was its potential for development in the near future.

These defendants were not experienced in buying or selling land in the community, but were possessed of general knowledge of land transactions such as would be possessed by the average citizen in the community who followed community development. They are, of course, interested parties. Their interest in the outcome of the case, and their limited knowledge of real estate values must be considered in reviewing their testimony and deciding the weight to be given thereto.

Two of the other three witnesses used by defendants were licensed real estate brokers. The other witness had been engaged primarily in timber and timber land transactions. His knowledge of property having a potential for development was very limited. While this witness came up with a final damage figure of $11,350.00, which amount is close to the final award of the Commissioners, the method by which he determined the damage is so lacking in reality that the evidence can be given little weight by the Court.

Guy B. Taylor, a licensed real estate broker, testified for the defendants. Mr. Taylor determined the damages to be $12,575.00. The fair market value of the land before the taking was determined to be $60,000.00. Mr. Taylor testified that the highest and best use of the land was for development purposes. He was under the impression that the land possessed high potential for development of a subdivision for residential purposes. Besides the taking of the land involved in the condemnation proceedings he attributed damage to the portion of the tract which was not within the easement area. He was familiar in a general way with recent sales, but did not make an investigation of them in arriving at his decision. Mr. Taylor was of the opinion that it was difficult to compare areas, because there were too many variables with which to work.

It was the opinion of Mr. Taylor that the erection of a large power transmission line across the 160 acre tract so as to run essentially through the middle or

---

[1]. The fourth paragraph of 16 U.S.C.A. § 831x provides: "Either or both parties may file exceptions to the award of said commissioners within twenty days from the date of the filing of said award in court. Exceptions filed to such award shall be heard before three Federal district judges unless the parties, in writing, in person, or by their attorneys, stipulate that the exceptions may be heard before a lesser number of judges. On such hearing such judges shall pass de novo upon the proceedings had before the commissioners, may view the property, and may take additional evidence. Upon such hearings the said judges shall file their own award, fixing therein the value of the property sought to be condemned, regardless of the award previously made by the said commissioners."

center thereof, would impair and reduce the value of the land outside the easement right of way for subdivision purposes.

D. H. Marchbanks, a licensed real estate broker, testified for defendants. This witness assigned damages at $16,000.00 to the land because of the imposition of the easement, giving a before value of $80,000.00, and after value of $64,000.00. Mr. Marchbanks was of the opinion that the land was worth $500.00 per acre, or $80,000.00, and that the imposition of the easement caused a damage of twenty per cent, or $16,000.00.

Mr. Marchbanks, like Mr. Taylor, was of the opinion that the location of the transmission line on the land, impaired the overall development of the property, and resulted in damages to the land which remained after the taking.

The plaintiff introduced three witnesses. One of these was an appraiser in the plaintiff's regular employment and the other two were real estate brokers. All three of these witnesses held the opinion that the only damage sustained by defendants was attributable to 10.3 acres taken, and the remainder of the tract suffered no damage on account thereof.

Joel M. Stevenson, a full time TVA employee, received his training as an appraiser through the TVA Appraisal Training Program. He graduated from Louisiana State University and completed two of the institute's appraisal courses. He had spent two and a half years in appraising in Mississippi and about four months in and about the county in which the subject property is located.

In the course of his investigation Mr. Stevenson located and verified a number of recent sales of property in the vicinity of the subject property, which he thought involved comparable or similar property. It was his opinion that the highest and best use of the property was its potential for future development as a residential area. While he was of the opinion that some areas of the property would develop more readily than the others, he estimated 100 acres of the 160 acres could be developed into residential property without too much work. Mr. Stevenson thought that the land had a fair market value of $36,000.00, and that its value after the imposition of the easement would be $33,425.00. Thus, he reasoned the value of the property sought to be condemned was $2,575.00. Mr. Stevenson arrived at his conclusion by assigning a value of $300.00 per acre to the 10.3 acres within the right-of-way area, or the sum of $3,090.00. He concluded the 10.3 acres would have some value after the imposition of the easement, and deducted from the $300.00 per acre, the sum of $50.00 per acre, resulting in an award of $250.00 per acre for the said 10.3 acres, or the total sum of $2,575.00. Mr. Stevenson left a $50.00 per acre value on the land within the right of way area for the defendants, and did not consider that the land in the tract outside the right-of-way area would suffer any damage by reason of the imposition of the easement across the tract.

Pat W. Haley, a resident of Oxford, had been engaged in the real estate business with his father for three or four years, and prior to that time had been engaged in the construction of houses and other structures for approximately 12 years. Mr. Haley's father developed a tract of land in or near the City of Oxford on which TVA held an easement for transmission line purposes. Mr. Haley later assisted his father in developing the property. The exact location of the line as regards the entire tract is not reflected on the record, but it is clear that in laying off lots and streets in the subdivision the subdivider was required to work around the easement. Mr. Haley was of the opinion that the presence of the line did not affect the price or marketability of the lots. The lots near the line sold as readily as those removed quite a distance therefrom. However, the record does not show whether the value of the undeveloped land was affected by the presence of the line. Mr. Haley was familiar with re-

cent sales in the area. One of the sales used by him in arriving at his decision involved what he considered to be a similar tract. This tract is referred to in the record as the "Garrett" or "Zinn" tract. This tract consists of 98 acres. It was sold to Zinn in 1964, and by him to Garrett in 1966. The sales price in 1966, after it had been improved to some extent by Zinn was $27,500.00, or $280.-00 per acre. The Garrett tract was sold for development purposes, and is situated near the land involved in the case sub judice. When questioned by one of the Commissioners, Mr. Haley stated that a half acre lot on the Garrett place, situated next to a duplex which he was constructing at the time would have a fair market value of $400.00.

Mr. Haley testified that, in his opinion, the highest and best use of defendants' land was for general farm use, although he expressed the idea that the land might possibly lend itself to development as a subdivision for residential use. Mr. Haley fixed the value of the 160 acre tract at $210.00 per acre, or an overall value of approximately $31,000.-00 or $32,000.00. His estimate of the damage was $2,000.00. He did not consider or make an award for any damage to the area outside the right-of-way.

The third witness for plaintiff was David Hawkins. Mr. Hawkins testified that the highest and best use for the land was the potential it had for future residential use and development. In arriving at his estimate of the damages, Mr. Hawkins did not assign any damage to the portion of the tract outside the right-of-way area, as he was of the opinion that the imposition of the easement and the construction of a large electric power transmission line across the tract would not adversely affect the market value of the tract as a whole. After comparing the tract with other similar tracts in the area which had been involved in recent sales and with which he was acquainted, Mr. Hawkins came to the conclusion that a fair market value of the tract before the taking was $32,-

000.00, and a fair market value after the taking was $29,500.00. The resulting damage was $2,500.00.

In sum, the case sub judice involves the imposition of an easement for electric power transmission line purposes on a 160 acre tract of land, situated near the City of Oxford, which has high potential for development as a residential area. The evidence is clear that the highest and best use of the land is for development purposes.

The evidence reflects a wide disparity in the amount of money which will afford defendants just compensation for their land. Plaintiff's proof varies from $2,000.00 to $2,575.00, and defendants' from $11,350.00 to $20,000.00. The Court must determine the principle underlying reason for such a wide disparity, especially where the witnesses appear to be well qualified in the field.

When the evidence is sifted, there emerges one compelling reason for such a side disparity. The witnesses for plaintiff had the opinion that the portion of the tract outside of the right-of-way area did not suffer incidental damages as the result of the taking. The witnesses for the defendants held a different view. It is because of this difference of opinion that such a wide disparity exists.

The Court is not impressed by the argument that the construction of a large electric power transmission line across a sizeable tract of land, which has a high potential for residential development, in such manner as to divide the land into two tracts, will not result in the infliction of incidental damages to the remaining portion of the tract. It may be true that good planning could no doubt greatly reduce interference by the easement with the development of the land outside the easement, but, the easement would create problems for a developer. In designing and laying out a residential subdivision on the land in question, a developer would necessarily have to work around the easement and would not be free to subdivide the land without re-

gard thereto. A prudent investor would be to some extent influenced by these facts in determining what he would pay for the land and would accordingly reduce his offering price.[2]

█ The Court finds from the evidence in the case that incidental or resulting damages have accrued to the remainder of the tract, by virtue of the taking of the easement, and such constitutes an element of damages which must be taken into consideration in arriving at the amount of the award in this case.

To the extent that the witnesses for plaintiff did not recognize incidental damages to the remaining portion of the tract, the Court must look to the other evidence in the case in order to reach a decision.

It is provided in 16 U.S.C.A. § 831x, inter alia, that in a hearing such as the one now before the Court, the district judge "shall pass *de novo* upon the proceedings had before the Commissioners, may view the property, and may take additional evidence", and that the judge shall file his own award, fixing the value of the property sought to be condemned "regardless of the award previously made by the said Commissioners". This section also provides for an appeal from the decision of the district judge to the Court of Appeals, where the Appellate Court shall dispose of the appeal on the record made in the trial court, but without regard to the awards or findings theretofore made by the Commissioners or the district judge, and fix the value of the property sought to be condemned.

The Court has not heard the witnesses testify in person, and must consider their testimony on the cold record. Neither has the Court visited or viewed the property, and has not received additional evidence. Under such circumstances the Court is not required to blind itself to the advantages of the Commissioners.[3]

The Commissioners evidenced much interest in the proceedings and frequently interrupted the testimony of a witness for questions of their own. The questions were, for the most part, directed to the vital issue of incidental or resulting damages to the part of the tract outside of the easement area.

█ After considering all of the evidence in the case and all portions of the record applicable to the tract here involved, the Court is of the opinion and so finds that the fair market value of the entire tract has been reduced by the sum of $10,250.00, by virtue of the taking.

An order will be prepared by counsel within ten days for entry consistent with this decision.

---

2. See United States v. Hughes, U.S.D.C. W.D.Tenn.W.D., 1966, 251 F.Supp. 930, 934.

3. United States v. Hughes, 251 F.Supp. 930, 933 (1966). United States ex rel. T. V. A. v. Powelson, 1943, 319 U.S. 266, 273, 63 S.Ct. 1047, 87 L.Ed. 1390, 1396.