DUFRESNE, Judge.
This case involves the taxation of costs against a creditor who attached cargo on-board a ship.
Plaintiffs, Magna Commercial A.G. and Grantrade PTY, Ltd. (Magna) commenced this action against the defendant, Commoil Ltd. for money due on an open account arising out of the sale of a quantity of crude oil in September 1987.
This action was filed pursuant to LSA-C. C.P. art. 3541(5) to attach a cargo of crude oil owned by Commoil, laden aboard the M.T. Maersk Nimrod, a tanker-vessel owned and operated by intervenors, Maersk Co. Ltd. and Britship (I.O.M.) Ltd.
Maersk is totally unrelated to Magna and Commoil, by contract or otherwise. Maersk had voyage-chartered the Nimrod to Flota Petrolera Ecuadoriana (Flopec) for purposes of carrying consignments of crude oil from Ecuador to Convent, Louisiana, located in St. James Parish, in February, 1988 at freight rates approaching $30,-000.00 per day for the use of the fully manned tanker. Flopec had subchartered the vessel to Commoil.
The tanker docked at the Capline Terminal in Convent, La. in February, 1988 for purposes of delivering the consignments of crude oil. These consignments were admittedly unrelated to the crude oil sold by Magna to Commoil in 1987. However, Magna asserting that Commoil had some interest in the crude oil being delivered by the Nimrod into the Capline Terminal, filed this suit for collection of a previous debt, and sought to obtain jurisdiction over nonresident Commoil by posting a $250.00 cost bond and requesting a writ of non-resident attachment of the crude oil in the tanks of the Nimrod.
Magna asserts that this action was filed in state court because federal court lacked jurisdiction, specifically Magna and Com-moil were alien corporations (and hence non-diverse) and Magna’s cause of action against Commoil arose out of a contract of sale and was not maritime in nature. Mag-na alleged that Commoil owed in excess of $12.6 million due to fraudulent non-payment of crude oil sold and delivered to Commoil. Magna also argues that the cargo onboard the Nimrod represented perhaps the only opportunity available to secure recovery of their claim against Com-moil.
On February 11, 1988, by authority of the state court writ, the St. James Parish Sheriff interrupted the discharging of the crude oil and attached 307,000 barrels of crude oil which was in the ship’s tanks. Magna did not request, nor did the Sheriff attempt to remove the crude oil in custo-dia legis from the ship's tanks to a place of storage. Instead, Magna and the Sheriff allowed the crude oil to remain in the ship’s tanks, thus physically preventing the ship from proceeding to its next engagement.
On February 12, 1988, Maersk filed an intervention seeking cost of storing the crude oil which was in custodia legis, damages due to the detention of the vessel during the term of the attachment, increased security for costs of $600,000.00 and further asked the court to set an emergency hearing to vacate the attachment.
The hearing was set to be heard in one week, however the court instructed Magna to immediately provide security in the amount of $150,000.00 (representing one week’s cost for loss of use of the ship). At this time, Capline ordered the Nimrod to vacate its berth because other vessels had to be discharged there.
Other parties intervened: Flopec sought dismissal of the attachment and damages because Magna wrongfully attached the cargo in the tanks of the chartered Nimrod, depriving Flopec of use of the ship; Ban-que Paribas intervened as owner of the arrested crude oil named in the bills of *798 lading, and moved for dismissal of the attachment and damages; and Tiger Petroleum Corp. N.V., intervened as the seller of the crude oil, seeking damages from the wrongful attachment which prevented delivery of the cargo and dissolution of the attachment.
There is no evidence in the record to indicate that any of the other intervenors were in any way involved in the 1987 transaction between Magna and Commoil out of which this action arises. These other inter-venors are not parties to this appeal.
Magna admits that the attachment accomplished its purpose. Seven days after the attachment of the Nimrod’s cargo, on February 18, 1988, Commoil acknowledged its indebtedness and entered into a settlement and security agreement with Magna to discharge that indebtedness. Magna thereupon released the attached cargo and the court vacated the writ of attachment, but refused to dismiss the entire case because of the interventions. However, the only intervention before this court is limited to Maersk’s claim for “cost” of using the Nimrod to store the attached crude oil in custodia legis for the period the ship was. detained.
Magna filed a peremptory exception denying that Maersk’s intervention asserted a cause of action. Subsequently, Maersk filed a “Rule for taxing and Payment of Costs” seeking compensation, based on the Nimrod’s earnings on its next voyage, in excess of $31,000.00 per day for the approximate one week period that the crude oil onboard the ship was subject to attachment.
Magna excepted to Maersk’s rule to show cause and filed a motion to stay on the grounds that the rule was improperly filed in light of Magna’s pending exception of no cause of action.
The trial court rejected Magna’s exception of no cause of action and ordered an evidentiary hearing to determine the “rental value” of the vessel as the “costs” due Maersk.
Maersk’s costs application was tried on December 18, 1988, and sought compensation based on gross earnings allegedly lost as a result of the writ of attachment. On June 29, 1989, the trial court entered written Reasons for Judgment and found that the evidence supported a fair rental rate for the Nimrod of $29,889.17 per day, or a total of $227,755.48 for the 7.62 days that the crude oil was stored in custodia legis in the ship’s tanks. Although it was necessary that the vessel remain fully manned during this period, it was not steaming and thus consumed no fuel except that necessary to shift in and out of the Capline Terminal. Accordingly, the court deducted the equivalent of port and fuel expenses from the gross hire, $54,056.20 leaving a net fair rental value of the vessel for its use to store the attached crude oil of $173,-699.38. The court added the cost of shifting in and out of the Capline Terminal of $16,373.07 for total costs of storing the crude oil in custodia legis of $190,072.35.
Magna has appealed the award to Maersk and assigns the following assignment of errors:.
1. The trial court erred in overruling petitioners’ Exception of No Cause of Action: A vessel owner has no claim for vessel detention resulting from a creditor’s good-faith exercise of legal rights.
2. The trial court erred in relying on Lyons v. Empire Fuel Co., 270 Fed. 930 (6th Cir.1921).
3. The trial court erred in relying on R.S. 13:3876 and 13:3880.
4. The trial court erred in relying on Gilbert v. Campise, 432 So.2d 423 (La.App.1983).
5. The trial court erred in taxing damages as costs.
6. The trial court erred in assessing costs on the basis of a speculative and theoretical chartering rate.
Magna argues that the state court should have applied (federal) general maritime law, not Louisiana law. Furthermore, Magna contends that the trial court had no discretion to disregard controlling federal authority. Bordelon v. T.L. James & Co., 380 So.2d 226 (La.App. 3rd Cir.1980).
Furthermore, Magna contends that Federal maritime law protects a claimant’s *799 (Magna’s) resort to legal process regardless of the validity of the claim, provided the claimant acts in good faith. Portland Shipping Co. v. The Alex Gibson, 44 F. 371 (D.C.Wash.1890)
Magna’s arrest of the cargo of crude oil on board the Nimrod, was prompted by the desire to secure an undisputed claim and necessitated by the fact that title would pass to the receiver once the cargo was pumped off the ship. Magna asserts that to the extent the arrest of the cargo may have detained the ship, it was an inconvenience, to which the owner must submit because Magna was exercising a legal right. As a consequence of this right, general maritime law does not recognize Maersk’s right to recover “detention” damages in absence of bad faith. Any “inconvenience” or delay to which Maersk must submit under maritime law is compensable in the form of demurrage chargeable to the charterer or the cargo as per the charter party. The Swedish Bark Adolph, 5 F. 114 (S.D.N.Y.1880).
Magna argues that the governing principle in this case is that Maersk has no legal right to recover vessel “detention losses” from a non-culpable party (Magna) exercising a legal right in good faith. It is Mag-na’s good-faith exercise of a legal right that exempts it from liability for Maersk’s alleged “detention losses”, not the nature of Maersk’s claim.
Magna’s original petition, as well as other pleadings sought to obtain jurisdiction over non-resident Commoil by obtaining from the Louisiana district court a writ of foreign attachment pursuant to Article 3541(5) of the Louisiana Code of Civil Procedure, asserting that Commoil owned property within St. James Parish. The State district court issued a writ of non-resident attachment which is founded upon, and exclusively subject to Louisiana Law and jurisprudence.
We hold this action and the attachment herein brought pursuant to Louisiana law cannot convert Magna’s claim into an admiralty action in rem to assert its lien. Absent any maritime demand pursuant to the “saving to suitors clause” brought by suit via ordinaria, in a non-maritime court, federal substantive admiralty law is inapplicable. Lavergne v. Western Company of North America, Inc. 371 So.2d 807 (La.1979).
Accordingly, we must apply Louisiana law. It is our statutory law, that when property is attached by the sheriff and in custodia legis, the party moving for and obtaining the attachment is prima facie liable for the cost of storing that property until there is a judgment against the defendant property owner and the judgment debtor pays the costs of arrest and storage, failing which, the mover of the arrest or attachment remains liable.
In Olson v. American Guaranty Co., 150 La. 470, 90 So. 764 (1922), our Supreme Court recognized the legal responsibility of the sheriff initially, and ultimately of the seizing party, for the costs of preserving arrested property, stating:
“There are expenses which the sheriff must necessarily pay himself, or become responsible for, in the exercise of his official duties, and which he has a right to charge for among his costs. Such are the necessary disbursements for the preservation and keeping of the property under seizure.”
Furthermore, “the plaintiff in a suit is primarily liable for all costs and fees of the officers whose services he evokes. This is one of the privileges of litigating....” James J. Reiss v. Spinnato, 154 La. 9, 97 So. 264 (1923).
The issue before us is whether the Maersk is entitled to an award for “detention losses” as a result of the vessel being used as a storage facility for the crude oil under court attachment.
Although the appellant has urged that the “detention losses” are not costs, but damages, we disagree. The expense of storing the crude oil is an element of expense that the mover of the attachment is liable for unless there is a judgment against the defendant property owner. Here the plaintiff, Magna has released the attached cargo and dismissed the proceeding against the defendant, thus Magna is *800 responsible and liable for the storage expense incurred to preserve the cargo while under the court attachment. Accordingly, we hold that Magna is liable for these storage expenses; however, we disagree with the trial court’s finding that the rate per day is in excess of $29,000. Instead, we hold that in accordance with the chartering contract, the Maersk is entitled to demurrage at the rate of $13,000 per day plus any port expenses incurred. This de-murrage rate was the agreed charge in the contract in the event that the Maersk Nimrod was delayed in any manner.
Accordingly, for the above reasons, we affirm the judgment of the trial court awarding storage expenses to Maersk, but amend the award as follows:
Demurrage Rate $13,000 per day x 7.62 days $ 99,060.00
Plus expenses of pilots, tugs, launches, etc. in shifting to and remaining at anchorage 16,373.07
Total: $115,433.07
The above and all costs of this appeal are assessed to the plaintiff-appellant, Magna Commercial A.G. and Grantrade PTY, Ltd.
AMENDED AND AFFIRMED.